UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK GREGORY
WUDZINSKI,

                Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

Case No. 4:15-cv-11062

Judge Terrence G. Berg

Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 12) AND GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 14)

**I.     RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 12), **GRANT** Defendant's motion for summary judgment (DE 14),

and **AFFIRM** the Commissioner's decision.

**II.     REPORT**

Plaintiff, Mark Gregory Wudzinski, brings this action under 42 U.S.C. §

405(g) for review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for disability insurance (DI) benefits.

This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (DE 12), the

Commissioner's cross motion for summary judgment (DE 14) and the
administrative record (DE 10).

## A.    Background

Plaintiff filed his application for DI benefits in February 2012, alleging that
he has been disabled since June 23, 2007, at age 45.  (R. at 134-137; *see also* R. at
156-162.)  Plaintiff alleges disability as a result of a metal plate in his right ankle,
spinal surgery, a third degree burn to his right arm (which included his hand), and
swelling in the left knee.  (R. at 166-172; *see also* R. at 235.)[1]  Plaintiff's
application was denied at the initial level in June 2012.  (R. at 56-65, 66, 77-87.)

In August 2012, Plaintiff sought a *de novo* hearing before an Administrative
Law Judge ("ALJ").  (R. at 88-89.)[2]  ALJ John J. Rabaut held a video hearing on
August 8, 2013, at which Plaintiff was represented by attorney Stefanie Rossi, and
Vocational Expert (VE) Scott Silver testified.  (R. at 33-55; *see also* R. at 126.)
On September 16, 2013, ALJ Rabaut determined that Plaintiff was not disabled
within the meaning of the Social Security Act.  (R. at 12-31.)

On November 19, 2013, Plaintiff enlisted new counsel and requested review
of the hearing decision.  (R. at 1, 2-3, 4-10, 203-209.)  On January 23, 2015, the

---

[1] He also suffered a burn to his face (R. at 230), but this was not listed in his claim
(R. at 167).

[2] It appears Plaintiff also filed for reconsideration on August 17, 2012, the case was
referred to Dr. McLarnon on or about October 19, 2012, and Mary McLarnon,
M.D. rendered her decision on October 22, 2012.  (R. at 67, 359-360.)

Appeals Council denied Plaintiff's request for review.  (R. at 68-73.)  Thus, ALJ

Rabaut's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on March 22, 2015.  (DE

1.)

### B.    Plaintiff's Medical History

Plaintiff's medical records span the period from January 12, 1995 to June

21, 2013.  (R. at 210-373 [Exhibits 1F-18F].)[3]  Of particular import here are

Plaintiff's medical records dated June 23, 2007, his alleged date of disability,

through June 30, 2010, his date last insured.

Although Plaintiff treated with Ronald Barnett, D.O. of Shores Primary Care

during this time (*see* R. at 324-342), particularly relevant to the case at bar are

Plaintiff's medical records regarding his admission to Detroit Receiving Hospital

on June 22, 2007 for treatment of first and second degree burns to his face and

right arm, which he suffered while "trying to cook breakfast on a propane stove on

his boat when the propane stove exploded."  (R. at 230-232; *see also* R. at 233-

234.)  On July 3, 2007, Michael T. White, M.D., performed several procedures:  a

split-thickness skin graft to the right hand, an excisional debridement of the

dorsum of the right hand, placement of split-thickness skin graft to the extensor

---

[3] Plaintiff's surgical history includes back surgery on January 12, 1995, left ankle
surgery on October 12, 1996, and an umbilical herniorrhaphy on April 9, 2007.  (R.
at 213-215, 222-225, 364-365.)  A herniorrhaphy is a "[s]urgical repair of a
hernia."  Stedman's Medical Dictionary 406360 (Nov. 2014).

side of the left forearm and arm, and excisional debridement of the right forearm and distal arm.  (R. at 235-237, 275-277.)  He was discharged on July 6, 2007.  (R. at 230-232.)

Plaintiff received follow up treatment from July 9, 2007 through May 9, 2008, including prescriptions for Vicodin and Lortab, as well as physical / occupational therapy.  (R. at 241-274, 296, 291, 288.)  Dr. White's notes from July 20, 2007 indicate that Plaintiff had a small blister on his right shoulder but that the wounds on his right arm and hand had closed.  (R. at 263, 265.)  Progress notes from February 15, 2008 indicate that Plaintiff did not show up for his last physical therapy appointment, scheduled for February 4, 2008.  (R. at 284.)  Burn Center follow up notes from May 9, 2008 seem to indicate that Plaintiff's right upper extremity split-thickness skin graft (STSG) had healed and that Plaintiff had good/full range of motion of his right upper extremity and hand.  (*See* R. at 241-242.)[4]

In a letter dated July 17, 2008, Dr. White opined that Plaintiff's "long-term prognosis includes some residual impairment in fine motor activity of his right hand, as well as limitations in his ability to lift over 10 lbs.  He will also be limited in his ability to perform repetitive movements with his right hand and upper extremity[.]"  (R. at 278.)

---

[4] These notes are stamped May 9, 2008; however, they appear to have been signed on July 11, 2008.  (R. at 241-242.)

C.      **Hearing Testimony**

1.      **Plaintiff's Testimony**

Plaintiff testified via video from Fort Gratiot, Michigan.  (R. at 35.)  At the

time of the hearing, Plaintiff was 52 years old.  (R. at 36.)  Plaintiff has an

Associate's Degree.  (R. at 36-37.)  He lives with his son in a single-story house

with a basement but first-floor laundry.  (R. at 37.)  Plaintiff testified that he last

worked in 2007.  (R. at 36.)  He is right-handed.  (R. at 48.)

With respect to Plaintiff's medical records, the ALJ focused his questions on

the period of 2007-2010, acknowledging both that Plaintiff's date of last insured

was June 2010 and that Plaintiff lost insurance seemingly during 2011, presumably

resulting in less medical treatment thereafter.  (R. at 37-38.)  Plaintiff testified that

it took him one year to heal following the June 2007 burn he suffered to his right

hand and arm, since which time he cannot lift with his arm and drops everything.

(R. at 38-39, 41-42, 48.)  Through rehabilitation, he learned to use a computer,

after which he went back to school and completed college; however, he was unable

to type.  (R. at 39-40.)  Plaintiff also testified that his recovery involved being "laid

up," and the issue with his spine worsened and crept down into his hip.  (R. at 38,

40.)  Now, his hip has gone out.  (R. at 40.)

Plaintiff testified about the problems he has had walking.  (R. at 40-41.)

Although he testified that he "can't walk very far[,]" he also stated that he has

"probably maybe a two-hour time span if [he has] to walk." Then, he has to lie down and stretch, otherwise his hip goes out of place. He has always had back pain. (R. at 41.) Additionally, his ankle swells up, and it takes approximately 45 minutes to an hour after he wakes up "to loosen it up to walk on it." (R. at 42.)

Plaintiff testified that he has a driver's license, but only drives if he has to. (R. at 41.) Plaintiff testified that he began to do the laundry himself again around nine or ten months after being burned, but he had his son's assistance. (R. at 42-43.) Now, his son takes care of most of the housework, because Plaintiff's arm does not function well, although he is able to empty the dishwasher. (R. at 41, 43.) Plaintiff also testified that, during the recovery period, he could sit for one or two hours before needing to lie down, and was unable to use his arm to do anything and had to keep it elevated for about six months (R. at 43-44). During 2009, he could sit for one to two hours, after which he "could get up and walk a little bit, and move around[,]" but did not need to lie down as before. (R. at 45.) However, between 2009 and 2010, his mobility got progressively worse. (R. at 45-46.) During this time, he finished up school, although he faced some limitations with standing and sitting. (R. at 46-47.)

With respect to his ability to resume sedentary or other work prior to June 2010, Plaintiff explained that he could not lift his arm, pick up any objects or write, as it was too painful. (R. at 47.) Plaintiff stated that his Vicodin causes problems

6

with his stomach, groin or lower abdomen, and he also takes Prilosec.  (R. at 47.)

He naps all of the time and does not sleep through the night, seemingly the result

of medication, soreness and/or pain.  (R. at 47-48.)

### 2.    Vocational Expert Testimony

Vocational Expert (VE) Scott Silver also testified.  (R. at 48-55.)  The VE

testified that an individual who could perform work at the light exertional level,

but who had certain postural limitations (could not climb ladders, ropes, or

scaffolds; could only occasionally climb ramps or stairs, balance, stoop, crouch,

kneel; and could not crawl), manipulative limitations (no constant overhead

reaching and handling, and handling or fingering with the right upper extremity)

and environmental limitations (avoid exposure to unprotected heights) could not

perform Plaintiff's past work as a construction manager.  (R. at 49-50.)  However,

the VE testified that such an individual could perform the light, unskilled jobs of

parking lot attendant, usher and office helper.  (R. at 50-51.)  In addition, the VE

testified that such an individual could perform work as a surveillance monitor at

the sedentary exertion level.  (R. at 51-52.)

Upon examination by Plaintiff's counsel, the VE testified that precluding use

of the dominant hand "grossly reduces the pool of jobs available to that person . . .

."  (R. at 53.)  However, the surveillance monitor position would still exist.  (R. at

53-54.)

7

**D.     The Administrative Decision[5]**

ALJ Rabaut rendered his decision on September 16, 2013.  (R. at 12-31.)  At

Step 1, he found that Plaintiff did not engage in substantial gainful activity during

the period from his alleged onset date of June 23, 2007 through his date last

insured of June 30, 2010.  (R. at 17.)

At Step 2, the ALJ found that Plaintiff had the following severe

impairments:  degenerative disc disease L5-S1 post laminectomy; status post third

degree burn, right wrist; status post ORIF (open reduction internal fixation) ankle

fracture; obesity; and avascular necrosis, right hip.  (R. at 17.)

---

[5] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1.      Is the claimant engaged in substantial gainful activity?
    2.      Does the claimant suffer from one or more severe impairments?
    3.      Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
    4.      Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
    5.      Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (R. at 17-18.)

At Step 4, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work, with multiple limitations.  (R. at 18-25.)  Moreover, the ALJ found that Plaintiff was unable to perform any past relevant work.  (R. at 25.)

At Step 5, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.  (R. at 26.)

### E.  Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the

10

merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651

(quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.    Analysis

In his motion for summary judgment, Plaintiff generally contends that the

ALJ's RFC and credibility determinations do not comply with social security rules

and regulations.  Under this broad umbrella, Plaintiff takes issue with the ALJ's

Step 3 listing determination and his assignment of weight to the opinion of one of

Plaintiff's treating physicians.  (DE 12 at 10-15.)  The Commissioner opposes

Plaintiff's motion, arguing that substantial evidence supports the ALJ's Step 3

listing analysis and Step 4 RFC determination.  (DE 14 at 9-17.)

I will address each of these issues:

### 1.    Plaintiff's Step 3 listing argument, to the extent he intended to bring one, is undeveloped and unavailing.

At Step 3, the ALJ concluded that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of one of

the listed impairments, specifically mentioning Listings 1.00Q ("Effects of

obesity."), 1.02 ("Major dysfunction of a joint(s) (due to any cause)"), 1.04

("Disorders of the spine") and 1.08 ("Soft tissue injury (e.g., burns)").  (R. at 17-

18.)  In a single paragraph of his brief, Plaintiff seems to challenge the ALJ's

conclusions as to Listings 1.02 and 1.08, although this was not identified as an

issue for review.  (DE 12 at 5, 10, 12; R. at 18.)  The Court should leave the ALJ's Step 3 listing determination intact.

First, Plaintiff's listing argument is inadequately developed.  He notes the ALJ's Step 2 finding that Plaintiff's severe impairments included a *third degree* burn to his right wrist (R. at 17), refers to Plaintiff's June / July 2007 diagnosis of *first and second degree* burns to his face and right arm (R. at 230) and then simply states, "[t]he medical records clearly reflect that Plaintiff met listing 1.02 and 1.08."  (DE 12 at 12.)  This Court is left to wonder how.

"Plaintiff bears the burden of establishing that he meets a particular listing . . . ."  *Mortzfield v. Comm'r of Soc. Sec.*, No. 12-15270, 2014 WL 1304991, at *14 (E.D. Mich. Mar. 31, 2014).  As the Commissioner correctly observes (DE 14 at 9-10), Plaintiff does not cite listing criteria or explain how the administrative record satisfies the criteria at issue.  *Mortzfield*, 2014 WL 1304991 at *14 ("even examining plaintiff's argument as raised in the reply brief, he offers no evidentiary analysis to support his claim that he satisfied the requirements of Listing 12.02. . . . Plaintiff cannot simply make the bald claims that the ALJ erred, while leaving it to the Court to scour the record to support this claim."),  *Harvey v. Comm'r of Soc. Sec.*, No. 14-CV-10614, 2014 WL 5465531, at *4 (E.D. Mich. Oct. 28, 2014) ("Although the ALJ did not explain his reasoning at Step Three . . . Harvey must show that there is evidence in the record that she meets any of the subsections

under Listing 1.04."), *Moran v. Comm'r of Soc. Sec.*, 40 F. Supp. 3d 896, 924 (E.D. Mich. 2014) ("the ALJ's analysis does not need to be extensive if the claimant fails to produce evidence that she meets the Listing.") (citation omitted).  Thus, Plaintiff's argument that he met listing 1.02 and 1.08 is "insufficient and undeveloped[,]" *Mortzfield*, 2014 WL 1304991, at *14, and Plaintiff has not met his burden to challenge the ALJ's Step 3 listing determination.

Second, the ALJ made several, specific observations about why Plaintiff's severe impairments did not meet the relative listings.  As to Listing 1.04, the ALJ observed that Plaintiff "lacks the requisite motor and sensory deficits and there is no evidence of spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication."  Next, as to Listings 1.02B or 1.08, the ALJ observed that Plaintiff "is able to perform fine and gross movements effectively as defined in the regulations," further observing that "the evidence does not establish that the claimant is under continuing surgical management for such condition as defined in the regulations."  Also, as to Listing 1.02A, the ALJ observed that Plaintiff "is able to ambulate effectively as defined in the regulations."  Finally, as to obesity, the ALJ observed that "there is no evidence in the case record of the requisite impact on musculoskeletal, respiratory, cardiovascular, or other body system functioning." (*See* R. at 18.)

13

Third, Plaintiff's attack upon *the time frame* of the ALJ's Step 3 listing decision is equally unavailing. Plaintiff seems to argue that the ALJ did not consider whether Plaintiff's impairments met the 12 month duration requirement (at any time during the June 23, 2007 onset date to the June 30, 2010 date last insured). (*See* DE 12 at 12.) Casually referencing (but not quoting) Dr. White's July 17, 2008 opinion, which stated that Plaintiff's long-term prognosis included "some residual impairment in fine motor activity of his right hand," and "limit[ation] in is ability to perform repetitive movements with his right hand and upper extremity[,]" (R. at 278), Plaintiff suggests that, "[t]hat would indicate Plaintiff had met the 12 month duration requirement and ought to have been at minimum awarded a closed period time of disability by the ALJ." (DE 12 at 12.) That conclusion would be quite a leap for the Court to take, without more.

Plaintiff asks this Court to conclude that Plaintiff met the 12 month duration requirement based upon Dr. White's fairly vague July 17, 2008 letter about Plaintiff's long-term prognosis (quoted above). (R. at 278, DE 12 at 12.) However, for the reasons discussed below the ALJ properly discounted this opinion. Moreover, as the Commissioner points out, Plaintiff was injured on June 22, 2007, and burn clinic progress notes dated May (or July) 2008 indicate Plaintiff was doing well with no pain (although he had back pain unrelated to his burn injury) and had full range of motion in his fingers and hand. (DE 14 at 11, R. at

14

21, 230-232, 242.)  In the end, the ALJ considered the listing definitions[6] and concluded that Plaintiff's severe impairments did not meet them.  Plaintiff has not met his burden to show otherwise.

### 2.    Substantial evidence supports the ALJ's Step 4 RFC determination.

Plaintiff's RFC is "the most [he or she] can still do despite the physical and mental limitations resulting from [his or] her impairments."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); s*ee also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence.  20 C.F.R. §§ 404.1527(3), 416.927(e).  '"ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'"  *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

### a.    The ALJ complied with SSR 96-8p.

Plaintiff generally asserts that the ALJ committed reversible error by not complying or even attempting to reconcile SSR 96-8p with his decision.  (*See* DE 12 at 14.)  This argument is fruitless.  Pursuant to Social Security Rule 96-8p, the RFC assessment must include:

---

[6] S*ee* https://www.ssa.gov/disability/professionals/bluebook/1.00-Musculoskeletal-Adult.htm.

> [A] narrative discussion *describing* how the evidence supports each
> conclusion, citing *specific medical facts* (*e.g.*, laboratory findings) and
> *nonmedical evidence* (*e.g.*, daily activities, observations).  In assessing
> RFC, the adjudicator must discuss the individual's ability to perform
> sustained work activities in an ordinary work setting on a regular and
> continuing basis (*i.e.*, *8 hours a day*, for 5 days a week, or an
> equivalent work schedule), and describe the maximum amount of each
> work-related activity the individual can perform based on the
> evidence available in the case record.  The adjudicator must also
> explain how any material *inconsistencies* or ambiguities in the
> evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *7 (emphases added and internal footnote

omitted).  In fact, the ALJ's Step 4 RFC determination is organized into a

summary of Plaintiff's testimony (R. at 19) and a review of "other evidence of

record," basically an extensive discussion of the medical record (R. at 19-23).  This

is followed by paragraphs describing why the ALJ reached his conclusions as to

many of the limitations appearing in the Step 4 RFC determination.  (R. at 23-24.)

Also, the ALJ's Step 4 RFC determination noted both that Plaintiff's "back

condition deteriorated prior to the date last insured, to the extent that he was

limited to sitting for approximately two hours *in a normal eight-hour workday*[,]"

and that Plaintiff "[p]rior to the date last insured . . . could stand and/or walk for

approximately six hours, and sit for approximately two hours, *in a normal eight-*

*hour workday*."  (R. at 23-24 (emphasis added).)  Also, as discussed in more detail

below with respect to credibility, the ALJ found Plaintiff's allegations regarding

limitations "significantly *inconsistent* with the record prior to the date last

16

insured."  (R. at 25 (emphasis added).)  The ALJ's Step 4 RFC determination having complied with the considerations set forth in SSR 96-8p, the Court should dismiss Plaintiff's general challenge regarding the ALJ's compliance with this regulation.

### b.  The ALJ's RFC determination was supported by substantial evidence.

Plaintiff's more specific challenges to the ALJ's Step 4 RFC determination are also fruitless.  As noted above, the ALJ determined that Plaintiff had the RFC to perform "light work," except that Plaintiff had certain *postural limitations* (could not "climb ladders, ropes, or scaffolds;" could only occasionally "climb ramps or stairs, balance, stoop, crouch, and kneel;" could not crawl;), certain *manipulative limitations* (could not "constantly perform overhead reaching, handling, or fingering with the right upper extremity;") and certain *environmental limitations* (should "avoid all exposure to unprotected heights.").  (R. at 18.) Here, Plaintiff argues that the ALJ's RFC "is contradictory to his severe impairment findings[,]" apparently questioning the ALJ's treatment of *exertional limitations* and *non-exertional limitations*.  (DE 12 at 11, 14.)[7]  In particular,

---

[7] Exertional limitations include lifting, carrying, standing, walking, sitting, pushing and pulling.  20 C.F.R. §§ 404.1569a(b), 416.969a(b).  Non-exertional limitations include difficulty (i) "functioning because you are nervous, anxious, or depressed;" (ii) "maintaining attention or concentrating;" (iii) "understanding or remembering detailed instructions;" (iv) "in seeing or hearing;" (v) "tolerating some physical feature(s) of certain work settings[;]" or (vi) "performing the manipulative or

17

Plaintiff challenges the alleged inconsistency between the ALJ's Step 2 severe impairment findings - (1) degenerative disc disease L5-S1 post laminectomy, (2) status post third degree burn, right wrist; (3) status post ORIF ankle fracture; (4) obesity, and (5) avascular necrosis, right hip – and (a) the lifting, standing and walking exertional requirements of light work (including the constant use of bilateral hands and feet) and (b) the manipulative limitations of handling and fingering with his right dominant hand.  (DE 12 at 11-12.)

At the outset, I note that the ALJ took at least *some* of Plaintiff's non-exertional limitations into consideration when he included the multiple foregoing postural (regarding climbing, balancing, stooping, kneeling, crouching and crawling) and manipulative limitations (reaching, handling and fingering), thus acknowledging that Plaintiff had at least some "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching[,]" *see* 20 C.F.R. §§ 404.1569a(c)(1)(vi), 416.969a(c)(1)(vi).  Still, each of Plaintiff's specific complaints will be addressed here.

       **i.**    **Plaintiff's challenges to the light work exertional limitations of lifting, standing and walking**

---

postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching."  20 C.F.R. §§ 404.1569a(c), 416.969a(c).

The regulations define the physical exertional requirements of light work as follows:

> Light work involves *lifting* no more than 20 pounds at a time with *frequent lifting or carrying* of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of *walking or standing*, or when it involves *sitting* most of the time with some *pushing* and *pulling* of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b) (emphases added); *see also* SSR 83-10 (S.S.A. 1983.)[8]

The ALJ found that, prior to the date last insured of June 30, 2010, Plaintiff "could lift, carry, push, and pull up to 20 pounds occasionally and up to 10 pounds frequently." (R. at 23.) The ALJ supported this conclusion by citing Plaintiff's January 12, 1995 decompressive lumbar laminotomy (R. at 364-366), as well as

_____

[8] "Frequent" means "occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work." SSR 83-10.

Plaintiff's documented back pain history, with citations to multiple treatment records from 2005 through 2013 (R. at 218-221, 306-353, 367-373). In addition, the ALJ acknowledged the June through July 2007 records from Detroit Receiving Hospital (R. at 229-239) and Dr. White's July 3, 2007 operative notes regarding Plaintiff's right extremity 3rd degree burns. (R. at 275-277). The ALJ also cited the February 15, 2008 progress notes, indicating that Plaintiff was independent with his activities of daily living (R. at 284.) Therefore, with respect to light work's exertional limitation on lifting, it cannot be said that the ALJ did not describe "how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p.

The Court should reach the same conclusion as to the ALJ's light work exertional limitations on standing and walking. Within his Step 4 RFC determination, the ALJ found that, prior to the date last insured, Plaintiff "could stand and/or walk for approximately six hours, and sit for approximately two hours, in a normal eight-hour workday." (R. at 24.) As to this conclusion, the ALJ pointed to the operative report from Plaintiff's October 12, 1996 ankle procedure (R. at 213-215), the July 10, 2009 notes regarding a left hip contusion (R. at 331), and the April 16, 2010 progress notes that Plaintiff's gait was coordinated and smooth, there was no pain or crepitus of joints and no weakness, asymmetry or

atrophy (R. at 324).[9]  Moreover, while the ALJ acknowledged the July 31, 2012

progress notes, which seemingly indicate right hip avascular necrosis (R. at 372),

the ALJ further observed that this occurred after the June 30, 2010 expiration of

Plaintiff's insured status.  Here, too, with respect to light work's exertional

limitations on standing and walking, the ALJ did in fact describe his decision in

accordance with SSR 96-8p.[10]

---

[9] Elsewhere in the ALJ's Step 4 determination, he acknowledged Dr. Barnett's May 31, 2006, March 7, 2007, April 16, 2010 and July 25, 2011 observations that Plaintiff's gait was coordinated and smooth.  (R. at 19-20, 22, 218, 312, 324, 346). The ALJ further acknowledged Dr. Barnett's November 11, 2009 notes that Plaintiff was generally doing well.  (R. at 22, 327.)

[10] Even though it is not specifically challenged in Plaintiff's motion, a brief note about the light work exertional limitation of *sitting* is warranted here, as one of Plaintiff's arguments is that the ALJ does not make "corresponding" limitations in the Step 4 RFC determination.  (DE 12 at 11.)  On August 8, 2013, Plaintiff testified about his ability to sit for one hour "to two at the most[,]" after his June 2007 burn, but also stated "that was before it progressively got worse[,]" between 2009 and 2010.  (*See* R. at 43-46; *see also* R. at 47.)  In the September 16, 2013 decision, the ALJ observed that "[e]vidence received at the hearing level . . . shows that the claimant is more limited than Dr. McLarnon determined with respect to the claimant's residual functional capacity for sitting[,]" and had the objectivity to further explain that the medical evidence and Plaintiff's testimony support a finding that his "back condition deteriorated prior to the date last insured [June 30, 2010], to the extent that he was limited to sitting for approximately two hours in a normal eight-hour workday."  (R. at 23; *see also* R. at 24.)

  To be sure, the RFC does not contain any further exertional restrictions on sitting, other than the definition of light work, which does not provide a clear limitation on sitting.  (*See* R. at 18, 20 C.F.R. §§ 404.1567(b), 416.967(b).) Nonetheless, this "omission," alone, is not a cause for remand.  First, the light jobs about which the VE testified (parking lot attendant, usher and office helper) were each classified as "unskilled," and "[r]elatively few unskilled light jobs are performed in a seated position."  (R. at 26, 50-51, SSR 83-10 (1983)); *see also*

### ii.   Plaintiff's challenges to the manipulative limitations of handling and fingering

The ALJ found that, prior to the date last insured, Plaintiff "could not constantly perform overhead reaching, handling, or fingering with the right upper extremity . . . ." (R. at 24.)  As justification for this finding, the ALJ specifically referred to the March 7, 2008 notes that that skin at the site of the graft was healed and Plaintiff had 4/5 strength in his right hand and fingers (R. at 243-244), observed that between October 3, 2007 and January 4, 2008, Plaintiff's right grip strength improved from 225 kg to 340 kg (R. at 295-296, 287-288), and noted that by May 2008, Plaintiff had full range of motion in his right hand, wrist and fingers (R. at 241-242, 336).  The ALJ also acknowledged that the January 4, 2008 physical therapy notes  reflect right arm pain (pain in his right wrist and fingers

---

*Short v. Dep't of Health and Human Servs.*, No. 91-5897, 1992 WL 92790 (May 4, 1992), *Robinson v. Sec'y of Health & Human Servs.*, No. 93-3330, 1994 WL 263905, *2-*3 (6th Cir. June 15, 1994).)  Second, even though "a job is in [the light work] category when it requires a good deal of walking or standing, *or when it involves sitting most of the time with some pushing and pulling of arm or leg controls*," 20 C.F.R. §§ 404.1567(b), 416.927(b) (emphasis added), "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday[,]" and "[s]itting may occur intermittently during the remaining time[,]" SSR 83-10 (1983), which would be *two hours*.  Moreover, the ALJ's RFC of light work includes "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds[,]" and the 6 hours standing and/or walking and 2 hours sitting described above.  (R. at 23; 20 C.F.R. §§ 404.1567(b), 416.927(b); SSR 83-10), which appears to be more restrictive than that imposed by Dr. McLarnon, i.e., lift and/or carry 20 pounds occasionally and 20 pounds frequently, stand and/or walk for a total of 6 hours and sit for a total of 6 hours (R. at 360, *see also* R. at 61).

when gripping or moving his wrist, and palpation "elicits generalized tenderness over right hand and forearm with sensitivity to touch") and problems holding on to objects with the right hand (functional limitations with gripping, holding objects in the right hand). (R. at 24, 287-288.)

Plaintiff appears to argue that the ALJ's Step 2 findings of "degenerative disc disease L5-S1 post laminectomy" and "status post ORIF ankle fracture" and/or that the ALJ's Step 4 RFC exertional limitation to "light work" (which he contends requires walking and lifting objects for most of the day), contradicts the ALJ's Step 4 RFC manipulative limitation that Plaintiff "could not constantly perform overhead reaching, handling, or fingering with the right upper extremity . . . ." (DE 12 at 11, R. at 17-18, 24.)  It is unclear what the purported contradiction is, and Plaintiff's brief is devoid of explanation; however, as with my conclusions regarding Plaintiff's challenges to the ALJ's exertional limitations, the ALJ did comply with the regulations, by describing "how the evidence supports each conclusion [as to the manipulative limitations], citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p.  Not having met his burden to successfully challenge the ALJ's Step 4 determination, the ALJ's manipulative limitations should stand.

### iii.  Plaintiff's challenge to the ALJ's assignment of weight to the treating source opinion

Finally, the Court should address Plaintiff's challenge to the "limited weight" assigned to treating physician Dr. White's July 17, 2008 opinion – specifically that the ALJ committed error by failing to adopt Dr. White's limitations as to lifting and use of the right hand. (*See* DE 12 at 11, 14, R. at 21, 278.) The SSA's assignment of weight to medical opinions is governed by 20 C.F.R. §§ 404.1527(c), 416.927(c). Generally, more weight is given to treating source opinions, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Dr. White summarized Plaintiff's long-term prognosis as including "*some* residual impairment in *fine motor activity* of his right hand," and having "*limitations* in his ability to lift over 10 lbs." (R. at 278 (emphases added).) Dr. White further opined that Plaintiff would be "*limited* in his ability to perform repetitive movements with his right hand and upper extremity[.]" (R. at 278 (emphasis added).) The ALJ found "that Dr. White's opinion is otherwise vague, and it does not meet the criteria of SSR 96-8p as a function-by-function analysis of the claimant's limitations." (R. at 22.) As alluded to above, I agree.

24

The ALJ properly analyzed Dr. White's opinion in accordance with the opinion evidence regulation. "When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Although Plaintiff contends that "[t]here was nothing vague in Dr. White stating the Plaintiff should not be trying to lift over 10 pounds and should not be doing repetitive movements with his right hand[,]" (DE 12 at 14), the Commissioner correctly points out that "limitations" could mean that Plaintiff "cannot lift more than ten pounds on a frequent basis." (DE 14 at 15.) Thus, the ALJ considered the supportability of Dr. White's opinion, a consideration that is permitted by the appropriate regulation. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3); *see also Pompos v. Comm'r of Soc. Sec.*, No. 3:12 CV 2276, 2013 WL 8116891, at *7 (N.D. Ohio Nov. 22, 2013), *report and recommendation adopted*, No. 3:12-CV-2276, 2014 WL 1154247 (N.D. Ohio Mar. 21, 2014) ("the ALJ properly noted the opinion was 'vague', and therefore lacked support. § 404.1527(c)(3)."). I further note that the opinion refers to "some" residual impairment in right hand fine motor activity, which is also vague. (R. at 278.)

The ALJ also assigned limited weight to this opinion on the basis that it was "not well supported by either the objective or other substantial evidence of record relative to exertional limitations," because:

> Plaintiff's "muscle strength at the right wrist was not significantly impaired . . ., when it was measured at 4/5[,]" citing the January 4, 2008 Physical Therapy Evaluation notes (R. at 287-288); and

> Plaintiff "voiced no pain complaints [regarding his burn] as of May 9, 2008[,]" citing the same-day Burn Center Ambulatory Service Interdisciplinary Clinic Follow-Up notes (R. at 241-242).[11]

(R. at 21-22.)  Thus, the ALJ concluded that Dr. White's opinion was inconsistent with the record as a whole, another consideration that is permitted by the appropriate regulation.  *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *see also Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993) ("the Secretary is not bound by the treating physician's opinions, and . . . such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence.").

### iv.   "Significant weight" was assigned to the opinion of Dr. McLarnon (non-examining state agency physician)

Instead, the ALJ appropriately accorded "significant weight" to the October 22, 2012 case analysis of non-examining state agency physician Mary McLarnon, M.D.  (*See* R. at 23, 360 [Ex. 15F].)  The weight given to nonexamining sources

_____

[11] These notes do document "back pain/unrelated to burn[.]"  (R. at 242.)

"will depend on the degree to which they provide supporting explanations for their opinions."  20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).  Furthermore, the SSA "will evaluate the degree to which these opinions consider all of the pertinent evidence in [the] claim, including opinions of treating and other examining sources."  *Id.*

The ALJ's reliance on Dr. McLarnon's opinion is in accordance with this regulation.  Dr. McLarnon appears to have opined that, from June 2007 to February 2012, Plaintiff had the ability to (a) lift and/or carry 20 pounds occasionally, (b) lift and/or carry 20 pounds frequently, (c) stand and/or walk for 6 hours in an 8 hour work day, and (d) sit for 6 hours in an 8 hour work day, but (e) could only handle and finger *frequently* with the right hand.  (*See* R. at 360 ["RFC 20/20; 6; 6[.]"]; *see also* R. at 61.)[12]  However, she also noted that, in July 2008, Plaintiff was able to carry 10 pounds with his right upper extremity (RUE), although he had some limitation in fine and rapid movements.  (R. at 360.)[13]

---

[12] The lifting and carrying limitations are consistent with "light work."  20 C.F.R. §§ 404.1567(b), 416.967(b) ("Light work involves *lifting* no more than 20 pounds at a time with frequent *lifting* or *carrying* of objects weighing up to 10 pounds.") (emphases added).

[13] The bases for Dr. McLarnon's October 22, 2012 case analysis  (as it relates to the period from June 2007 to February 2012) appear to be:  (a) Shores Care Progress notes from December 22, 2011 and March 23, 2012, which note "refer for PT" and "re start PT" (R. at 309, 307); (b) records concerning July 2007 surgery for "[t]hird degree burns to right dorsum of hand and right forearm and distal arm[,]" (R. at 235-237; *see also* R. at 275-277); and (c) Michael T. White, M.D.'s

In assigning "significant weight" to Dr. McLarnon's opinion, the ALJ expressly observed that May 5, 2008 and May 9, 2008 progress and follow-up notes indicated full range of motion in the right finger(s), hand and wrist. (R. at 23, 242, 336.)  Thus, although she was a non-examining physician, the ALJ properly credited Dr. McLarnon's opinion by citing medical records which support her conclusion that Plaintiff was capable of frequent handling and fingering with the right upper extremity or, as phrased in the RFC, "cannot constantly perform overhead reaching, handling, or fingering with the right upper extremity[.]"  (R. at 18.)

### c.   The RFC finding should be affirmed.

Plaintiff's challenges to the ALJ's Step 4 RFC limitations are unavailing. Moreover, the ALJ properly discounted the opinion of treating physician Dr. White and appropriately credited the opinion of non-examining state agency physician Dr. McLarnon.  "[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  Here, Plaintiff has failed to meet this burden.  Moreover, as set forth above, the ALJ adequately explained and supported

---

July 17, 2008 letter stating that Plaintiff's "long-term prognosis includes some residual impairment in fine motor activity of his right hand, as well as limitations in his ability to lift over 10 lbs. He will also be limited in his ability to perform repetitive movements with his right hand and upper extremity[,]" (R. at 278).

his decision, which was supported by substantial evidence.  Therefore, the ALJ's

Step 4 RFC determination should stand.

### 3.     Substantial evidence supports the ALJ's assessment of Plaintiff's credibility.

Plaintiff challenges the ALJ's credibility determination.  (*See* DE 12 at 5, 8,

10.)  The standard of review requires that an ALJ's assessment of credibility be

given "great weight and deference, since he [or she] had the opportunity to observe

the witness's demeanor." *Infantado v. Astrue,* 263 F. App'x 469, 475 (6th Cir.

2008).  Nevertheless, "an ALJ's assessment of a claimant's credibility must be

supported by substantial evidence." *Walters,* 127 F.3d at 531.

Credibility challenges are further guided by the Social Security

Administration's regulations concerning the evaluation of symptoms, including

pain.  20 C.F.R. §§ 404.1529, 416.929; *see also* SSR 96-7p ("Assessing The

Credibility Of An Individual's Statements").  Among other things, these

regulations provide that "[f]actors relevant to your symptoms, such as pain, which

we will consider include:

> (i)     Your daily activities;
>
> (ii)    The location, duration, frequency, and intensity of your pain or other symptoms;
>
> (iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any
        medication you take or have taken to alleviate your pain or
        other symptoms;

(v)     Treatment, other than medication, you receive or have received
        for relief of your pain or other symptoms;

(vi)    Any measures you use or have used to relieve your pain or
        other symptoms (e.g., lying flat on your back, standing for 15 to
        20 minutes every hour, sleeping on a board, etc.); and

(vii)   Other factors concerning your functional limitations and
        restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The Court should find that Plaintiff's credibility argument lacks merit. First,

the ALJ adequately applied the 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) factors.

Within his Step 4 RFC determination, the ALJ found that statements concerning

the intensity, persistence and limiting effects of Plaintiff's alleged symptoms were

not entirely credible. (R. at 24-25.) Specifically, the ALJ found that Plaintiff's

allegations regarding limitations were "significantly inconsistent with the record

prior to the date last insured[,]" explaining as follows:

> First, the objective evidence of record weighs heavily against the
> claimant's allegations, as set forth above. The record reflects no
> significant longitudinal treatment history after May 2008 and prior to
> the date last insured (Ex. 6F, pp. 2, 3)[14] to address the claimant's
> severe impairments affecting the right upper extremity, spine, and/or
> hip. When a claimant alleges a condition severe enough to be

---

[14] Here, the ALJ referenced the May 2008 or July 2008 follow-up notes from the
Burn Center Ambulatory Service Interdisciplinary Clinic. (R. at 241-242.)

disabling, there is a reasonable expectation that he will seek
examination and treatment. The claimant's failure to seek treatment,
other than analgesic medication, reflects poorly on his credibility and
the assertions that the condition was disabling prior to the date last
insured. [*See* **20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v).**]

\*\*\*\*\*

When considering the claimant's daily activities that included laundry,
driving, and studying college level academic materials that culminated
in the award of an associate's degree, I find the claimant is capable of
work as set forth in more detail in the residual functional capacity,
particularly noting the absence of any significant longitudinal
treatment history to the contrary. [*See* **20 C.F.R. §§
404.1529(c)(3)(i), 416.929(c)(3)(i).**]

Further, the residual functional capacity addresses demands that might
exacerbate the claimant's symptomatology, as well as having
considered the location, duration, frequency, and intensity of the
symptomatology. [*See* **20 C.F.R. §§ 404.1529(c)(3)(ii),
416.929(c)(3)(ii).**]

In addition, the documentary evidence of record fails to indicate any
significant side effects from medications. [*See* **20 C.F.R. §§
404.1529(c)(3)(iv), 416.929(c)(3)(iv).**]

(R. at 25.)[15]   Thus, it is clear that the ALJ expressly considered many of the factors

set forth to evaluate the "the intensity and persistence of [Plaintiff's] symptoms,

such as pain," 20 C.F.R. § 404.1529(c), and Plaintiff's contention that the ALJ

---

[15] Within his explanation, the ALJ incorrectly states that "although the claimant
was instructed to wear a pressure garment until approximately November 2008[],
Mr. Wudzinski testified that he discontinued same in early 2008." (R. at 25.)   The
Court suspects the ALJ was referring to Plaintiff's testimony that "as of *early
2008*, he did not elevate his right upper extremity, and within nine to 10 months
after the June 2007 accident, he could do laundry and empty the dishwasher." (R.
at 24 (emphasis added); *see also* R. at 40-45.)

"never discusses or evaluates Mr. Wudzinski's subjective complaints . . ." under this subsection (DE 12 at 13) lacks merit.

Second, Plaintiff's assertion that the ALJ committed "legal error" by never factoring or even attempting to factor Plaintiff's "severe fatigue, severe pain, need to lie down, or severe medication side effects[,]" s*ee* DE 12 at 12-14, also lacks merit.  As an initial matter, even if the ALJ did not expressly mention fatigue or Plaintiff's testimony about sleeping or needing to lie down (*see* R. at 41, 44-48), the ALJ's decision does note the functional limitation of sleeping recorded in the October 3, 2007 physical therapy notes.  (R. at 20, 295-296.)  Likewise, given the phrasing of the ALJ's third hypothetical to the VE (as to needing extended or additional breaks beyond those traditionally granted in unskilled work - whether to lie down, walk away, or be off task), it is clear the ALJ considered the issue of rest in forming his decision.  (*See* R. at 52.)

More importantly, contrary to Plaintiff's assertion, the ALJ in fact referenced pain multiple times throughout the Step 4 RFC determination.  For example, the ALJ's summary of Plaintiff's testimony expressly cites elbow pain and back pain (R. at 19), and the ALJ's discussion of the medical record is littered with references to pain, including the assertion that Plaintiff's chronic pain was evaluated consistent with SSR 03-2p (R. at 19-23).  Finally, the ALJ acknowledged Plaintiff's testimony that his medication side effects included "stomach issues and

32

lower abdominal/groin pain[,]" and, as noted above, ultimately concluded that "the documentary evidence of record fails to indicate any significant side effects from medications."  (R. at 19, 25.)

Plaintiff has the burden of proof in a challenge to the ALJ's Step 4 RFC determination.  *See Walters*, 127 F.3d at 529.  As illustrated above, neither of Plaintiff's challenges to the ALJ's credibility assessment has merit.  Therefore, the ALJ's credibility determination should not be overturned.

### G.    Conclusion

In sum, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment, **GRANT** Defendant's motion for summary judgment, and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 29, 2016          s/Anthony P. Patti
                              Anthony P. Patti
                              UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on July 29, 2016, electronically and/or by U.S. Mail.

                              s/Michael Williams
                              Case Manager for the
                              Honorable Anthony P. Patti

34